Michael L. Schrag (SBN 185832)
Geoffrey A. Munroe (SBN 228590)
Joshua J. Bloomfield (SBN 212172)
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
mls@classlawgroup.com
gam@classlawgroup.com
jjb@classlawgroup.com

Enrico Schaefer (*pro hac vice application forthcoming*)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, Michigan 49684
Tel.: (231) 932-0411
Fax: (231) 932-0636
enrico@traverselegal.com

Adrianos Facchetti, Of Counsel (SBN 243213)
TRAVERSE LEGAL, PLC
301 East Colorado Boulevard, Suite 520
Pasadena, California 91101
Tel.: (626) 793-8607
Fax: (626) 793-7293
adrianos@facchettilaw.com

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY FARMER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AIRBNB, INC.; AIRBNB PAYMENTS, INC.,<br><br>Defendants. | Case No. 3:20-cv-7842<br><br>CLASS ACTION COMPLAINT<br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.      As the COVID-19 pandemic reached the United States earlier this year, Airbnb announced that it would allow Guests to cancel their reservations for a full refund and no cancellation fees.

2.      Airbnb is planning an IPO for later in the year and needed the positive press. But that press came at the expense of Hosts, who had negotiated their own cancellation policies with Guests and were hurt as much as anyone by the pandemic's sudden impact on travel.

3.      Airbnb soon apologized to Hosts and announced that it was establishing a $250 million fund to help pay Hosts for cancelled bookings. It turns out, however, that this was yet another ruse to burnish the company's public image, and that Airbnb was in effect paying Hosts with their own money.

4.      Airbnb had not actually issued full refunds to Guests as it said it would. Instead, Airbnb rejected many Guests' refund requests, forced others to accept travel credits that expire next year, and issued only partial refunds to still more Guests.

5.      Airbnb then kept the remaining funds for itself—ignoring its fiduciary and contractual obligations to remit any such money to Hosts.

6.      Plaintiff is one of the hundreds of thousands of Hosts who have been shortchanged by Airbnb. He brings this proposed class action in an effort to stop Airbnb's unlawful conduct, compel Airbnb to make a full accounting to Hosts, and require Airbnb to compensate Hosts for profiting at their expense.

## JURISDICTION

7.      The Court has subject matter jurisdiction pursuant to  28 U.S.C. § 1332(d)(2) because this is a class action in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs; in the aggregate, there are more than 100 members in the proposed class; and at least one class member is a citizen of a state different from Defendant.

1

## INTRADISTRICT ASSIGNMENT

2      8.      Assignment to the San Francisco Division or Oakland Division is appropriate

3   under Local Rule 3-2(c), as both defendants are headquartered in San Francisco and their

4   applicable terms of service require judicial proceedings to be brought in San Francisco.

5

## PARTIES

6      9.      Plaintiff Anthony Farmer is a Texas citizen who previously offered vacation

7   rentals through the Airbnb platform.

8      10.      Defendant Airbnb, Inc., is a Delaware corporation headquartered in San

9   Francisco, California.

10      11.      Defendant Airbnb Payments, Inc., is a subsidiary of Airbnb that is also

11   incorporated under the laws of Delaware and headquartered at the same address in San

12   Francisco, California. Plaintiff alleges upon information and belief that Airbnb wholly

13   owns and controls Airbnb Payments.

14

## FACTUAL ALLEGATIONS

15   **A.      Airbnb's Obligation to Pay Hosts in the Event of Cancelled Bookings**

16      12.      Defendant Airbnb operates an online marketplace for vacation rentals. It

17   makes money by connecting "Hosts" who own vacation properties with "Guests" in need

18   of accommodations—and taking a percentage of each booking. The company recently

19   valued itself at more than $25 billion.

20      13.      Airbnb stresses in its Terms of Service that it is only an intermediary. When

21   users "make or accept a booking, they are entering into a contract directly with each other.

22   Airbnb is not and does not become a party to or other participant in any contractual

23   relationship between [users]." Terms, ¶ 1.2.

24      14.      Although Airbnb is not supposed to participate in transactions between its

25   users, it does provide users a vehicle to pay one another through a subsidiary corporation

26   called Airbnb Payments.

27

28

15. Airbnb users are required to agree to Payments Terms of Service, which appoint Airbnb Payments as the Hosts' agent for collecting payment from Guests and obligates Airbnb Payments to turn over collected fees to Hosts.

16. In a typical transaction, Airbnb Payments will collect payment from the Guest at the time of booking, hold that payment until after the designated check-in time, and then transfer the payment to the Host after deducting taxes and Airbnb's service fee.

17. In the event that a Guest cancels a confirmed booking, the Payments Terms require Airbnb Payments to "remit a Payout of any portion of the Total Fees due to [the Host] under the applicable cancellation policy." Payments Terms, ¶ 7.2.4.

18. The "applicable cancellation policy" is the cancellation policy displayed on the property listing and agreed to by the Guest at the time of booking. As Airbnb states in its Terms of Service, "Upon receipt of a booking confirmation from Airbnb, a legally binding agreement is formed between you and your Host, subject to any additional terms and conditions of the Host that apply, including in particular the applicable cancellation policy."

19. Hosts may choose from among six cancellation polices to include with their listings: "Flexible," "Moderate," "Strict," "Long Term," "Super Strict 30 days," and "Super Strict 60 days." *See* https://www.airbnb.com/home/cancellation_policies.

20. Depending on which of these policies was agreed to by the Host and Guest, a portion of the Guest's payment may be non-refundable upon cancellation. Under the Payments Terms, that non-refundable portion—less taxes and Airbnb's service fee—must be turned over to the Host by Airbnb Payments. Payments Terms, ¶ 7.2.3-7.2.4.

**B.    Airbnb's Extenuating Circumstances Policy**

21. The portion of the Payments Terms concerning "Payouts" does not include any exception for extenuating circumstances, but a section dealing with "Fees improperly paid to you as a Host" provides that if "Airbnb issues a refund to the Guest in accordance with the Airbnb Terms, Guest Refund Policy, Experiences Guest Refund Policy, Extenuating Circumstances Policy, or other applicable cancellation policy, you agree that in

the event you have already been paid, Airbnb Payments will be entitled to recover the amount of any such refund from you, including by subtracting such refund amount out from any future Payouts due to you."

22.     Airbnb's Terms of Service also makes reference to the Extenuating Circumstances Policy, stating in relevant part, "Unless extenuating circumstances exist, any portion of the Total Fees due to the Host under the applicable cancellation policy will be remitted to the Host by Airbnb Payments pursuant to the Payments Terms." Terms, ¶ 9.2.

23.     Similarly, in answer to the question, "What happens to my payout if my guest cancels," Airbnb's Help Center states, "If a guest cancels (either before or during a trip), they're automatically refunded according to your cancellation policy, unless the cancellation qualifies for an additional refund under the Guest Refund Policy or because of a documented extenuating circumstance."

24.     The hyperlinks concerning extenuating circumstances in the Payments Terms, Terms of Service, and Help Center all currently direct the user to https://www.airbnb.com/help/article/1320/extenuating-circumstances-policy, which describes Airbnb's current Extenuating Circumstances Policy. That same Extenuating Circumstances Policy is also referenced and hyperlinked three additional times in the Term's section on Booking Modifications, Cancellations and Refunds.

25.     Airbnb's Extenuating Circumstances Policy is reserved for rare and unforeseen events that arise between booking and the scheduled check-in date, and requires supporting documentation or special review before Airbnb will approve refunds.

26.     The Extenuating Circumstances Policy currently states that Airbnb may be able to offer a full refund in the event of certain unexpected events, including death; serious illness or injury; urgent travel restrictions or severe security advisories; natural disaster; or epidemic disease.

27.     The Extenuating Circumstances Policy has changed somewhat over time, however, and while the precise dates of all such changes are not clear from publicly available information, Plaintiff alleges upon information and belief that prior to the

1   COVID-19 pandemic, the Extenuating Circumstances Policy did not refer to epidemic

2   diseases or pandemics—it referred only to endemic diseases such as Chagas Disease, Zika,

3   and Ebola.

4   　　　　28.　　In addition to changing its Extenuating Circumstances Policy to cover

5   epidemic diseases rather than endemic diseases, Airbnb also recently announced that it will

6   update the Extenuating Circumstances Policy to include pandemics as well—effective

7   January 20, 2021.

8   　　　　29.　　In all versions of the Extenuating Circumstances Policy, Airbnb is only

9   authorized to provide Guests a refund. No version of the Extenuating Circumstances Policy

10  permits Airbnb to offer travel credits instead of refunds, and no version of the Extenuating

11  Circumstances Policy permits Airbnb Payments to retain money paid by Guests rather than

12  refunding it to Guests or paying it out to Hosts.

13  **C.　　Airbnb's Public Response to the COVID-19 Pandemic**

14  　　　　30.　　When the COVID-19 pandemic began spreading across the United States

15  earlier this year, Guests were often unable or unwilling to travel and decided to cancel

16  bookings they had made with Hosts for vacation rentals.

17  　　　　31.　　As businesses throughout the country struggled with how to respond to

18  widespread requests for refunds, Airbnb quickly announced that it would offer full

19  refunds to Guests who booked their vacation rentals on or before March 14, 2020—even if

20  the agreement between the Guest and Host did not provide for a full refund. Airbnb said it

21  would be offering these refunds under its Extenuating Circumstances Policy.

22  　　　　32.　　In many cases, the refunds Airbnb claimed it was offering would come

23  directly out of Hosts' pockets. The Guests and Hosts had previously agreed on a

24  cancellation policy that allocated the risk between each respective side, and Airbnb was

25  now overriding the terms of the Guest-Host contract and siding entirely with one group of

26  Airbnb users (the Guests) and against another group of users (the Hosts).

27  　　　　33.　　Airbnb ultimately apologized to Hosts, with its CEO writing that he was

28  "sorry that we did not consult you—like partners should." At the same time, Airbnb

1    publicly announced it had set aside $250 million to help pay Hosts for cancelled bookings.

2    Hosts would be eligible to receive 25% of what they would've received from a Guest under

3    the cancellation policy in place at the time of the booking.

4         34.    Both Airbnb's announcement that it would issue full refunds to Guests and

5    its subsequent announcement that it would set aside $250 million for Hosts were widely

6    covered in the press and helped enhance the company's public appeal prior to its

7    upcoming IPO.

8         **D.**    **Airbnb Shortchanges Guests and Hosts**

9         35.    Airbnb has not lived up to its public promises. Rather than issuing full

10   refunds to Guests who cancelled bookings, Airbnb is giving Guests travel credits, issuing

11   partial refunds, or denying Guests any compensation whatsoever.

12         36.    Hundreds of Guests have complained about Airbnb's refund process, which

13   has often required Guests to contact customer service repeatedly, navigate a confusing web

14   interface designed to force Guests to accept a travel credit rather than a full refund, and

15   upload a variety of supporting documentation to support their claim.

16

17

18

19

20

21

22

23

24

25

26

27

28

37.     The screenshot below illustrates how Airbnb is using "dark patterns" to withhold full refunds from Guests and instead steer them toward a travel credit or other inferior options.



38.     Airbnb's web interface appears to offer only two cancellation options: the Host's cancellation policy, which in this case would provide the user with no refund; or a €334.75 option that, upon closer examination, is actually for a "travel credit" that must be used by the end of next year.

39.     The option for a "full cash refund" appears only at the bottom of the webpage, without its own radio button, and is accompanied by a warning that it will "require submitting official documentation." (To make the "travel credit" and "full cash refund" options more apparent, red underlining has been added to the photo.)

40.     If Guests recognize they are being offered travel credits rather than full refunds, and find the link to "Get started" on the full refund process, Airbnb then requires them to justify why they can't travel due to COVID-19—even though Airbnb's public pronouncements included no such limitation.



## Let us know why you can't travel due to COVID-19

⦿ Government restrictions prohibit me from leaving my location or going to the destination

◯ I'm sick and my healthcare provider has instructed me not to travel

◯ My means of transportation have been cancelled or closed, making it impossible to travel

◯ I am a healthcare professional being required to work and can't travel

[Continue]

41.     Guests are then required to submit documentation to support their stated justification, which Airbnb often rejects as insufficient.

42.     The end result is that many Guests are forced to accept travel credits they are unlikely to use, partial refunds (under the Host's cancellation policy), or nothing at all.

43.     At the same time, Airbnb is forcing Hosts to accept 25% of the amount called for by their own cancellation policies, or nothing at all. Airbnb Payments is uniformly refusing to pay Hosts the money they are owed under the Payments Terms—even if that money has not been refunded to the Guest.

44.     By shortchanging both Hosts and Guests, Airbnb has been able to retain large sums of money that Airbnb Payments was holding in escrow when the pandemic started. This money doesn't belong to Airbnb.

**E.     Airbnb Changes Its Terms to Authorize Similar Conduct in the Future**

45.     Airbnb recently announced that it is changing its Terms of Service, Airbnb Payments' Payments Terms of Service, and its Extenuating Circumstances Policy. These

terms are effective immediately for new Airbnb users and on January 20, 2021, for existing Airbnb users.

46.    The new Extenuating Circumstances Policy now provides that Airbnb may issue travel credits or other consideration instead of a refund, while the new Terms of Service now provide that Airbnb may reduce the Host's payout by the amount of any costs Airbnb incurs as a result of a cancellation (including, presumably, the face value of travel credits).

47.    The new Terms of Service also now provide that Airbnb's Extenuating Circumstances Policy may preempt the Host's cancellation policy and that Airbnb may delay payment to Hosts if it reasonably expects to provide a refund under the Extenuating Circumstances Policy.

## PLAINTIFF'S EXPERIENCE

48.    Plaintiff Anthony Farmer is a Host who regularly used Airbnb to list vacation rentals. He is currently unemployed and previously depended on Airbnb for a large percentage of his income.

49.    As a result of Airbnb's practices and Airbnb Payments' failure to remit payment for cancelled reservations, Plaintiff has lost at least $655.

50.    For example, one Guest booked two nights in Plaintiffs' vacation property, with check-in scheduled for March 27, 2020, and agreed to a "Strict" cancellation policy under which Plaintiff would retain 50% of the nightly rate if the Guest cancelled more than 7 days prior to check-in. The Guest cancelled the booking on March 12, 2020, and under the Payments Terms, Plaintiff was entitled to receive 50% of the nightly rate from Airbnb.

51.    Airbnb Payments initially paid Plaintiff $99.91 in cancellation fees owed to him under his cancellation policy, but then reversed the transaction two weeks later. It did not allow him to retain even 25% of the cancellation fee as Airbnb had told the public it would under its $250 million Host relief fund.

52.    Plaintiff contacted Airbnb Support to ask why Airbnb was "taking back the $99 that's already hit my account," and noting that with him "trying to count every penny

1  and make ends meet, this is an absolutely devastating blow and seemingly is coming out of

2  nowhere."

3      53.    Airbnb Support declined to reverse the transaction or provide Plaintiff with

4  any portion of the amount Plaintiff was owed by Airbnb Payments under the cancellation

5  policy he and his Guest had agreed to. When Plaintiff requested to speak to someone on

6  the phone, Airbnb Support took 18 days to respond and said it was "not able to do a phone

7  call."

8      54.    Plaintiff tried once more to get someone from Airbnb to speak with him, but

9  Airbnb again refused, writing instead, "[W]e decided that what we have provided is

10  sufficient for your query. We consider the decision final."

11      55.    Collectively, Airbnb Payments has paid Plaintiff only $185.03 for six bookings

12  that were cancelled by Guests in March or April 2020. Under the cancellation policies that

13  the Guests agreed to at the time of booking, Plaintiff should have been paid at least $840.03

14  by Airbnb Payments for those six bookings.

15      56.    Airbnb Payments has not provided a full and accurate accounting to Plaintiff

16  stating whether his Guests were refunded in full or were instead given travel credits or

17  some lesser cash payment. In fact, with respect to the Guest scheduled to check in on

18  March 27, Airbnb indicated that the Guest was only refunded $135.50 of the $225 that

19  Airbnb Payments originally collected from the Guest.

20      **ARBITRATION AND CHOICE OF LAW ALLEGATIONS**

21      57.    Airbnb's Terms of Service and Airbnb Payments' Payments Terms of Service

22  both include an arbitration clause that required Plaintiff to initially file his claims with the

23  American Arbitration Association (AAA). Terms, ¶ 19; Payments Terms, ¶ 23.

24      58.    Plaintiff filed his claims with AAA on July 28, 2020, and AAA sent the parties

25  an initiation letter on August 31, 2020, which required Airbnb to pay AAA $1,8000 before

26  the arbitration could proceed. Those fees were owed by Airbnb under AAA's Consumer

27  Arbitration Rules and were due by September 14, 2020.

28

59.     Airbnb failed to pay the fees required by AAA within 30 days of the due date, and as a result the arbitration could not proceed. On October 21, 2020, AAA confirmed by letter to the parties that it had yet to receive payment in full from Airbnb.

60.     Under California Code of Civil Procedure § 1281.97(a), Airbnb's failure to pay AAA in full within 30 days of the due date constitutes a waiver of Airbnb's right to compel arbitration.

61.     Plaintiff has elected to withdraw his claim from arbitration, as permitted by Code of Civil Procedure §1281.97(b), and proceed before this Court.

62.     Under both Airbnb's Terms of Service and Airbnb Payments' Payments Terms of Service, judicial proceedings are required to be brought in state or federal court in San Francisco, California. Terms, ¶ 21.1; Payments Terms, ¶ 21.1.

63.     Airbnb's Terms of Service and Airbnb Payments' Payments Terms of Service also provide that their terms "will be interpreted in accordance with the laws of the State of California and the United States of America, without regard to conflict-of-law provisions." Terms, ¶ 21.1; Payments Terms, ¶ 21.1.

## CLASS ALLEGATIONS

64.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks to pursue his claims on behalf of a class of similarly situated persons. The parameters of the class may be refined through discovery and will be subject to Court approval and modification, but for purposes of this complaint, Plaintiff proposes the following class definition:

> All persons residing in the United States who accepted rental bookings through the Airbnb platform that were subsequently cancelled by the booking party, and who were not paid the amount owed to them under the booking's cancellation policy.

Plaintiff further proposes the following persons be excluded from any certified class: Plaintiff's counsel, members of Plaintiff's counsel's immediate families, officers, directors, employees of Plaintiff's law firm and any entity property owners controlled by such people;

1    Defendants, their current or former officers, directors, legal representatives, and

2    employees; any and all parent companies, subsidiaries, predecessors, successors, or assigns

3    of Defendants; and all judicial officers and associated court staff assigned to this case and

4    their immediate family members.

5        65.    The proposed class meets the requirements for class certification pursuant to

6    Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3).

7        66.    *Numerosity*: The class is sufficiently numerous such that joinder of all

8    members is impracticable. The number of active Hosts in the United States is in the

9    hundreds of thousands—far too many to include in one action through individual joinders.

10       67.    *Commonality:* Plaintiff's and class members' claims against Defendants

11    present common questions of law and fact, including:

12        a.    Did Airbnb Payments breach the Payments Terms by failing to turn over

13    money owed to Hosts under their cancellation policies?

14        b.    Did Airbnb breach its Terms of Service by failing to cause Airbnb Payments

15    to remit the portion of fees due to Hosts under their cancellation policies?

16        c.    Was Airbnb authorized under its Extenuating Circumstances Policy to offer

17    refunds to any Guest who cancelled a booking made on or before March 14, 2020?

18        d.    If so, were Defendants permitted to keep money paid by Guests who were

19    not fully refunded their money?

20        e.    Did Airbnb Payments owe Hosts a fiduciary duty to act in the utmost good

21    faith with regard to money collected from Guests on Hosts' behalf?

22        f.    Did Airbnb Payments earn secret profits while operating as the Hosts'

23    collection agent?

24        g.    Did Airbnb Payments provide Hosts a complete and accurate accounting of

25    its disposition of money it collected while acting as an agent for the Hosts?

26        h.    Is it unfair for Defendants to retain money that Airbnb Payments collects

27    from Guests as the collection agent for Hosts?

28

68.   *Typicality:* Plaintiff's claims against Defendants are typical of the class's claims. Airbnb Payments acted as collection agent for both Plaintiff and class members, and has failed to remit or give a proper accounting of money collected from both Plaintiff and class members. In addition, Plaintiff and class members' claims depend in significant part on uniform contractual terms that govern both Airbnb and Airbnb Payments' provision of services, as well as on uniform policies administered by Airbnb.

69.   *Adequacy*: Plaintiff is a member of the proposed class and will fairly and adequately protect its interests. Plaintiff's interests are also properly aligned with those of class members, as each seeks to hold Defendants liable for failing to remit or give a proper accounting of money collected from Guests on their behalf.

70.   *Predominance*: The common questions identified above are likely to predominate at trial when compared to any individualized issues that may arise. The major issues upon which Defendants' liability depends—in particular, the issues of whether Defendants were authorized to refund money paid to Hosts by Guests under its Extenuating Circumstances Policy, and whether Defendants were authorized to retain money that was not actually returned to Guests—are susceptible to generalized proof that could establish Defendants' liability as to all class members through a single trial.

71.   *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Successfully prosecuting class members' claims will likely take several years and involve extensive pre-trial litigation against a $25 billion company, large amounts of electronically stored information, and multiple expert witnesses. These are matters that are best handled through unified class-wide representation, which can be conducted on a contingency basis and offers class members economies of scale unavailable in individual proceedings. A class action also has the benefit of comprehensive supervision by a single court and will avoid the risk of inconsistent results.

72.   *Injunctive Relief*: Defendants have wrongly withheld funds and failed to provide a proper accounting to Plaintiff and class members on common grounds, such that

1  final injunctive relief or corresponding declaratory relief is appropriate respecting the class

2  as a whole.

3  <div align="center">**FIRST CAUSE OF ACTION**</div>

4  <div align="center">**Breach of Contract Against All Defendants**</div>

5  73.    Plaintiff alleges this cause of action on his own behalf and on behalf of the

6  proposed class, and in so doing, incorporates all preceding allegations.

7  74.    Airbnb's Terms of Service constitute a binding contract between Hosts and

8  Airbnb. The Terms of Service incorporate by reference Airbnb's Extenuating Circumstances

9  Policy.

10  75.    Airbnb Payments' Payments Terms of Service constitute a binding contract

11  between Hosts and Airbnb Payments.

12  76.    Plaintiff and class members have fulfilled their contractual obligations or

13  were excused from doing so, but Airbnb and Airbnb Payments have not.

14  77.    Airbnb Payments breached the Payments Terms by failing to "remit a Payout

15  of any portion of the Total Fees due to [Hosts] under the applicable cancellation policy."

16  Payments Terms, ¶ 7.2.4.

17  78.    Airbnb Payments collected money from Guests as the collection agent for

18  Plaintiff and class members, but when Guests later cancelled their rental bookings, Airbnb

19  Payments did not remit to Plaintiff and class members the portion of those fees owing to

20  them under the cancellation policy that Guests had previously agreed would apply.

21  79.    Airbnb similarly promised in its Terms of Service that, "[u]nless extenuating

22  circumstances exist, any portion of the Total Fees due to the Host under the applicable

23  cancellation policy will be remitted to the Host by Airbnb Payments pursuant to the

24  Payments Terms." Terms, ¶ 9.3.

25  80.    Airbnb breached that promise by failing to cause Airbnb Payments to remit to

26  Plaintiffs and class members the money they were owed.

27  81.    Airbnb also breached the Terms of Service by offering Guests refunds that it

28  was not authorized to provide under its Extenuating Circumstances Policy. The

1  Extenuating Circumstances Policy that applied when Guests booked their vacation rentals
2  did not authorize Airbnb to offer refunds to entire regions or groups of people affected by a
3  new disease. Airbnb was only authorized to offer refunds to regions or groups of people
4  affected by endemic diseases, and COVID-19 is not an endemic disease.

5       82.     To the extent the Terms and incorporated Extenuating Circumstances Policy
6  afforded Airbnb discretion to decide whether to issue refunds to Guests affected by the
7  COVID-19 pandemic, Airbnb breached the implied covenant of good faith and fair dealing
8  by exercising that discretion unfairly and in bad faith.

9       83.     As a result of Defendants' breaches of their contractual obligations, Plaintiff
10 and class members have been denied funds owed to them under Defendants' Terms of
11 Service and Payments Terms and have been damaged in an amount according to proof.

12
13 <center>**SECOND CAUSE OF ACTION**
**Breach of Fiduciary Duty Against Airbnb Payments**</center>

14      84.     Plaintiff alleges this cause of action on his own behalf and on behalf of the
15 proposed class, and in so doing, incorporates all preceding allegations.

16      85.     Airbnb Payments was appointed to serve as the payment collection agent for
17 Hosts under the Airbnb Payments Terms of Service. Payments Terms, ¶ 9.

18      86.     In its capacity as the payment collection agent, Airbnb Payments collected
19 money from Guests who purchased services from Plaintiff and class members.

20      87.     Airbnb Payments owed Plaintiff and class members a fiduciary duty to act
21 with the utmost good faith in its handling and disposition of the money it collected.

22      88.     Airbnb Payments breached its fiduciary duty by knowingly and intentionally
23 acting against Plaintiff's and class members' interests, secretly profiting from its agency
24 relationship, and failing to disclose to Plaintiff and class members all information relevant
25 to the subject matter of its agency.

26      89.     Airbnb Payments failed to remit money it had collected from Guests and that,
27 upon the Guests' cancellation of their bookings, was owed to Plaintiff and class members
28 under their contracts with Guests.

90.     Airbnb Payments also retained money it had collected from Guests for the benefit of Plaintiff and class members and failed to disclose that it had done so.

91.     Plaintiff and class members did not give Airbnb Payments informed consent to retain funds collected for their benefit.

92.     As a result of Airbnb Payments' breach of its fiduciary duty, Plaintiff and class members were damaged in an amount according to proof. Plaintiff and class members seek a full accounting of the funds collected by Airbnb Payments on their behalf; forfeiture of any fees or commissions that otherwise might be paid in connection with those transactions; disgorgement of all profits obtained as a result of Airbnb Payments' breach of its fiduciary duty; an award of compensatory damages; and an award of exemplary damages.

**THIRD CAUSE OF ACTION**
**Violation of Unfair Competition Law Against All Defendants**

93.     Plaintiff alleges this cause of action on his own behalf and on behalf of the proposed class, and in so doing, incorporates all preceding allegations.

94.     Defendants have violated and continue to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et. seq., which prohibits unlawful, fraudulent, and unfair business acts and practices.

95.     *Unlawful Practices*: Defendants have engaged in unlawful business practices by systematically breaching their contractual and fiduciary obligations to Plaintiff and Class members, as previously alleged.

96.     *Unfair Practices*: Defendants have engaged in unfair business practices by systematically retaining funds that Airbnb Payments collected from Guests for the benefit of Hosts, and by applying Airbnb's Extenuating Circumstances Policy in a misleading and bad faith manner designed to allow Defendants to retain funds that are neither paid out to Hosts nor refunded to Guests.

97.     Airbnb's scheme is unethical, unscrupulous, oppressive, and substantially injurious to Hosts and Guests, and any legitimate utility of the practice is outweighed by the harm to Hosts and Guests.

98.     As a result of Airbnb's unfair and unlawful practices, Plaintiff and class members have suffered injury in fact and lost money.

99.     Pursuant to California Business and Professions Code section 17203, Plaintiff and class members seek such orders or judgments as may be necessary to prevent Airbnb from continuing to engage in unfair competition, including injunctive relief requiring Airbnb to properly account for money collected for the benefit of Plaintiff and class members; enjoining Airbnb from continuing to retain money collected from Guests for the benefit of Hosts; and requiring Airbnb to rescind recent changes to its Terms of Service, which otherwise would authorize Airbnb to utilize the same or a similar scheme in the future.

100.    Plaintiff and class members also seek restitution of all money that Airbnb may have acquired by means of its unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and those similarly situated, requests the following relief:

   a.   A determination that this action may be maintained as a class action;

   b.   An award of damages according to proof, including statutory damages, treble damages, and punitive damages where allowed by law;

   c.   Appropriate injunctive and equitable relief, including a Court-ordered accounting;

   d.   Pre-judgment interest and post-judgment interest, as provided by law;

   e.   Attorneys' fees and costs of suit, including expert fees and costs;

   f.   Such further relief as the Court may find just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury for all issues so triable.

1

2    Dated: November 5, 2020                    */s/ Michael L. Schrag*

3                                               Michael L. Schrag (SBN 185832)
                                                Geoffrey A. Munroe (SBN 228590)
4                                               Joshua J. Bloomfield (SBN 212172)
                                                **GIBBS LAW GROUP LLP**
5                                               505 14th Street, Suite 1110
                                                Oakland, California 94612
6                                               Telephone: (510) 350-9700
                                                Facsimile: (510) 350-9701
7                                               mls@classlawgroup.com
                                                gam@classlawgroup.com
8                                               jjb@classlawgroup.com
9
                                                Enrico Schaefer (*pro hac vice application pending*)
10                                              **TRAVERSE LEGAL, PLC**
                                                810 Cottageview Drive, Unit G-20
11                                              Traverse City, Michigan 49684
                                                Tel.: (231) 932-0411
12                                              Fax.: (231) 932-0636
                                                enrico@traverselegal.com
13

14                                              Adrianos Facchetti, Of Counsel (SBN 243213)
15                                              **TRAVERSE LEGAL, PLC**
                                                301 East Colorado Boulevard, Suite 520
16                                              Pasadena, California 91101
                                                Tel.: (626) 793-8607
17                                              Fax.: (626) 793-7293
                                                adrianos@facchettilaw.com
18

19                                              *Counsel for Plaintiff and the Proposed Class*

20

21

22

23

24

25

26

27

28