JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

HAILYN J. CHEN (State Bar No. 237436)
hailyn.chen@mto.com
KATHERINE G. INCANTALUPO (State Bar No. 321783)
katherine.incantalupo@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

Attorneys for Defendants Airbnb, Inc. and Airbnb
Payments, Inc.

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| ANTHONY FARMER, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>AIRBNB, INC.; AIRBNB PAYMENTS, INC.,<br><br>        Defendants. | Case No. 4:20-cv-7842-JST<br><br>**DEFENDANTS AIRBNB, INC. AND AIRBNB PAYMENTS, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO DISMISS THE COMPLAINT**<br><br>Judge:   Hon. Jon S. Tigar<br>Crtrm.:  6<br>Hearing: March 18, 2021 at 2:00 p.m. |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS .............1

STATEMENT OF RELIEF SOUGHT ........................................................................................1

STATEMENT OF ISSUES TO BE DECIDED..........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

I.      INTRODUCTION ............................................................................................1

II.     STATEMENT OF FACTS ..............................................................................3

        A.      Plaintiff's Allegations .........................................................................3

        B.      The Terms of Service (TOS)................................................................3

                1.      Plaintiff Assented to the TOS..................................................3

                2.      The TOS Contain Broad Arbitration Provisions That Delegate Gateway Issues to the Arbitrator .................................4

        C.      Plaintiff Initiates an AAA Arbitration, and Airbnb Pays Any Applicable Arbitration Initiation Fees Within 30 Days After Their Due Date...........................6

        D.      Plaintiff's Efforts to Withdraw from the AAA Arbitration........................................7

III.    ARGUMENT ....................................................................................................8

        A.      The Federal Arbitration Act Governs....................................................9

        B.      The Court Should Compel Arbitration of Plaintiff's Claims ....................................9

                1.      Plaintiff Agreed to Arbitrate His Claims Against Airbnb............................10

                2.      The Delegation Clause Is "Clear and Unmistakable" and Thus Compels Arbitration of Gateway Issues Including Scope and Enforceability ......................12

        C.      Plaintiff's Invocation of California Code of Civil Procedure Section 1281.97 Does Not Dictate a Different Result ............................................14

                1.      Whether Airbnb "Material[ly] Breach[ed]" or Waived the Arbitration Agreements Under Section 1281.97(a) Is a Question for the Arbitrator .....................14

                2.      Even if the Court Had Authority to Consider the Applicability of Section 1281.97, Airbnb Did Not Breach the Arbitration Agreements........................17

                3.      Section 1281.97 Does Not Apply to Motions to Compel Arbitration Brought in Federal Court Under the FAA................................21

# TABLE OF CONTENTS
## (continued)

Page

4.    Section 1281.97 Is Preempted by the FAA ................................................. 21

D.    The Court Should Dismiss Plaintiff's Complaint ................................................... 22

IV.    **CONCLUSION** ............................................................................................................... 23

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**FEDERAL CASES**

4
5

*Adams v. Postmates, Inc.*,
　414 F. Supp. 3d 1246 (N.D. Cal. 2019) ....................................................................16

6

*AT&T Mobility LLC v. Concepcion*,
　563 U.S. 333 (2011) ................................................................................................9, 22

7
8

*Blair v. Rent-A-Ctr., Inc.*,
　928 F.3d 819 (9th Cir. 2019).......................................................................................22

9
10

*Brennan v. Opus Bank*,
　796 F.3d 1125 (9th Cir. 2015).....................................................................................13

11

*Brunner v. Lyft, Inc.*,
　No. 19-cv-4808, 2019 WL 6001945 (N.D. Cal. Nov. 14, 2019) ...............................16

12
13

*Chiron Corp. v. Ortho Diagnostics Sys., Inc.*,
　207 F.3d 1126 (9th Cir. 2000).....................................................................................10

14
15

*Dean Witter Reynolds, Inc. v. Byrd*,
　470 U.S. 213 (1985) ...............................................................................................10, 22

16

*Dekker v. Vivint Solar, Inc.*,
　No. 19-cv-7918, 2020 WL 4732194 (N.D. Cal. Aug. 14, 2020) ................. 16, passim

17
18

*DirecTV, Inc. v. Imburgia*,
　577 U.S. 47 (2015) .........................................................................................................9

19
20

*Dohrmann v. Intuit, Inc.*,
　823 F. App'x 482 (9th Cir. 2020).................................................................................10

21

*First Options of Chi., Inc. v. Kaplan*,
　514 U.S. 938 (1995) .................................................................................................10, 12

22
23

*Hamby v. Power Toyota Irvine*,
　No. 11-cv-0544, 2012 WL 13036860 (S.D. Cal. Mar. 22, 2012) ..............................14

24
25

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
　139 S. Ct. 524 (2019) .................................................................................................8, 12

26

*Jones-Mixon v. Bloomingdale's, Inc.*,
　No. 14-cv-1103, 2014 WL 2736020 (N.D. Cal. June 11, 2014)..................................22

27
28

*Klein v. Delbert Servs. Corp.*,
　No. 15-cv-0432, 2015 WL 1503427 (N.D. Cal. Apr. 1, 2015)....................................22

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Lee v. Ticketmaster L.L.C.*,
   817 F. App'x 393 (9th Cir. 2020)................................................................................11

4

5

*Lewis v. UBS Fin. Servs. Inc.*,
   818 F. Supp. 2d 1161 (N.D. Cal. 2011) ......................................................................23

6

7

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
   363 F.3d 1010 (9th Cir. 2004)....................................................................................16

8

*McLellan v. Fitbit, Inc.*,
   No. 16-cv-0036, 2018 WL 3549042 (N.D. Cal. July 24, 2018)................................22

9

10

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017).........................................................................................11

11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) .....................................................................................................9

12

13

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016)....................................................................................12

14

15

*Momot v. Mastro*,
   652 F.3d 982 (9th Cir. 2011)................................................................................12, 13

16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .........................................................................................................9

17

18

*Nat'l Cas. Co. v. First State Ins. Grp.*,
   No. 04-cv-10167, 2005 WL 8175828 (D. Mass. Apr. 28, 2005) ........................15, 16

19

*Ngo v. PMGI Fin., LLC*,
   No. 18-cv-5401, 2018 WL 6618316 (N.D. Cal. Dec. 18, 2018)..........................14, 15

20

21

*Peter v. DoorDash, Inc.*,
   445 F. Supp. 3d 580 (N.D. Cal. 2020) .........................................................10, 11, 12

22

23

*Pierce Cnty. v. MA Mortenson Co.*,
   798 F. App'x 160 (9th Cir. 2020)...............................................................................14

24

*Plazza v. Airbnb, Inc.*,
   289 F. Supp. 3d 537 (S.D.N.Y. 2018) .......................................................................11

25

26

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
   862 F.3d 981 (9th Cir. 2017)................................................................................12, 13

27

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) .....................................................................................................12

28

Case No. 4:20-cv-7842-JST

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4
*Selden v. Airbnb, Inc.*,
  No. 16-cv-0933, 2016 WL 6476934 (D.D.C. Nov. 1, 2016) ....................................................11

5
*Sparling v. Hoffman Constr. Co.*,
  864 F.2d 635 (9th Cir. 1988)..................................................................................................22

6

7
*Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*,
  823 F.3d 524 (9th Cir. 2016)..................................................................................................15

8

9
*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
  368 F.3d 1053 (9th Cir. 2004)................................................................................................22

10
*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*,
  489 U.S. 468 (1989) ...............................................................................................................9

11

12
*Wolsey, Ltd. v. Foodmaker, Inc.*,
  144 F.3d 1205 (9th Cir. 1998)................................................................................................21

13
STATE CASES

14

15
*Bruni v. Didion*,
  160 Cal. App. 4th 1272 (2008)...............................................................................................12

16
*Dream Theater, Inc. v. Dream Theater*,
  124 Cal App. 4th 547 (2004)..................................................................................................12

17

18
*Greenspan v. LADT, LLC*,
  185 Cal. App. 4th 1413 (2010)...............................................................................................16

19

20
*Malone v. Super. Ct.*,
  226 Cal. App. 4th 1551 (2014)...............................................................................................13

21
*Rodriguez v. Am. Techs., Inc.*,
  136 Cal. App. 4th 1110 (2006)...............................................................................................13

22

23
*Sandquist v. Lebo Auto., Inc.*,
  1 Cal. 5th 233, 243 (2016).....................................................................................................12

24
FEDERAL STATUTES

25
9 U.S.C. § 2 ................................................................................................................................9, 22

26
9 U.S.C. § 3 ...................................................................................................................................22

27
9 U.S.C. § 4 .....................................................................................................................................1

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS

1

**TABLE OF AUTHORITIES**
(continued)

2
**Page(s)**

3
**STATE STATUTES**

4
Cal. Civ. Proc. Code § 1281.97 ............................................................................ 2, passim

5
**RULES – OTHER**

6
AAA Consumer Arbitration Rule 1 ..............................................................................8, 17

7
AAA Consumer Arbitration Rule 2 ..............................................................................18, 19

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS

## NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS

PLEASE TAKE NOTICE that, on March 18, 2021, at 2:00 p.m., or as soon thereafter as may be heard, Defendants Airbnb, Inc. and Airbnb Payments, Inc. (collectively, "Airbnb") will and hereby do move to compel arbitration and to dismiss Plaintiff's Complaint.  Airbnb's motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. section 4, and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Monique Chauvet ("Chauvet Decl."), the Declaration of Kajsa M. Minor ("Minor Decl."), all pleadings and papers on file in this matter, and such other matters as may be presented to this Court at the hearing or otherwise.

## STATEMENT OF RELIEF SOUGHT

Airbnb seeks an order pursuant to 9 U.S.C. section 4 compelling arbitration of Plaintiff's claim and dismissing the Complaint.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiff's claim should be compelled to arbitration and dismissed.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

This lawsuit, which challenges Airbnb's refunding of Guests' reservation payments in response to the COVID-19 pandemic, cannot proceed in this forum because the claims at issue here are subject to binding, individual arbitration.  Plaintiff admits that Airbnb's Terms of Service ("General TOS") and Payments Terms of Service ("Payments TOS") (collectively, the "TOS")—which govern the contractual relationship between Plaintiff, a Texas-based Airbnb Host who listed accommodations through Airbnb's online platform, and Airbnb—"both include an arbitration clause that required Plaintiff" to arbitrate his asserted claims against Airbnb.  (Compl. ¶ 57.)  And, in fact, Plaintiff commenced a currently pending arbitration against Airbnb before the American Arbitration Association ("AAA") seeking $1,000 in compensatory damages.  (Minor Decl. Ex. B, at 4.)  After Airbnb answered Plaintiff's arbitration demand and an arbitrator had been appointed, Plaintiff attempted—unsuccessfully—to withdraw his claims from arbitration, invoking California

1    Code of Civil Procedure section 1281.97.  The Court should reject Plaintiff's improper attempt to

2    avoid his obligation to arbitrate his claims against Airbnb, and should compel arbitration.

3          On a motion to compel arbitration, this Court's inquiry is limited to two questions.  *First*,

4    the Court must determine whether Plaintiff assented to the arbitration provisions.  Assent is

5    unquestionably established here.  Plaintiff admits that he was required under the TOS to arbitrate

6    his claims, and he in fact initially filed a demand in arbitration, thereby conceding that he assented

7    to the TOS and the arbitration agreements contained therein.  (Compl. ¶ 57 ("Airbnb's Terms of

8    Service and Airbnb Payments' Payments Terms of Service both include an arbitration clause that

9    required Plaintiff to initially file his claims with the American Arbitration Association . . . .").)

10          *Second*, once assent is established—as it is here—the Court must determine whether

11    Plaintiff's claims fall within the scope of the agreements to arbitrate.  Here, by initially filing these

12    same claims in arbitration, Plaintiff has conceded that his claims fall within the scope of the

13    agreements to arbitrate.[1]  In any event, Plaintiff's assent to the TOS ends the Court's inquiry

14    because the arbitration provisions delegate all threshold issues regarding the arbitrability of

15    Plaintiff's claims to the arbitrator.  Under settled law, "clear and unmistakable" delegation clauses

16    are enforceable and, when present, all questions of arbitrability must be resolved by the arbitrator,

17    not the Court.  The delegation clause here is plainly "clear and unmistakable":  the TOS expressly

18    authorize the arbitrator to resolve all issues pertaining to the "applicability, breach, termination,

19    validity, enforcement or interpretation" of the TOS, including the arbitration provisions.  (*See*

20    Chauvet Decl. Ex. G § 19.4; Chauvet Decl. Ex. H § 22.4.)  Accordingly, whether Plaintiff's

21    particular claims fall within the scope of the TOS and whether any defense to arbitration exists are

22    questions that must be resolved by the arbitrator, not this Court.

23          Plaintiff's invocation of section 1281.97 is entirely misplaced for several reasons, and is no

24    obstacle to arbitration here.  *First*, the parties have agreed to delegate the question of whether

25    Airbnb breached or waived the arbitration agreements under section 1281.97 to the arbitrator, not

26    the Court.  *Second*, even if this were an issue for the Court to resolve and section 1281.97 applied

27

28    _____

[1] As discussed *infra*, the arbitration provisions in the General TOS and the Payments TOS are substantively identical.

1   here—which it does not—Airbnb did not breach or waive the parties' arbitration agreements

2   because Airbnb paid any fees necessary to initiate an arbitration within 30 days after the due date

3   for such fees.  *Third*, section 1281.97 by its plain terms applies only to motions to compel brought

4   under the California Arbitration Act, not to this Motion brought under the Federal Arbitration Act.

5   *Fourth*, section 1281.97 is inconsistent with, and preempted by, the Federal Arbitration Act.

6           For these reasons, the Court should compel arbitration and dismiss the Complaint.

7   **II.**     **STATEMENT OF FACTS**

8           **A.**     **Plaintiff's Allegations**

9           Airbnb provides an online platform that connects third parties who wish to offer their unique

10  accommodations (called "Hosts") with third-party travelers seeking to book accommodations

11  (called "Guests") (collectively, "Users").  (*See* Compl. ¶ 12; *see also* Chauvet Decl. ¶ 2.)  Plaintiff

12  is a Host who lists accommodations through Airbnb's platform.  (Compl. ¶ 48.)  Plaintiff alleges

13  that he and the Guests who booked his accommodations using Airbnb's platform agreed to a

14  "Strict" cancellation policy "under which Plaintiff would retain 50% of the nightly rate if the Guest

15  cancelled more than 7 days prior to check-in."  (Compl. ¶ 50.)  Plaintiff alleges that Airbnb

16  breached the TOS by offering, in response to the COVID-19 pandemic, full refunds under its

17  Extenuating Circumstances Policy to six Guests who had booked his accommodations on or before

18  March 14, 2020.  (Compl. ¶¶ 31, 55.)  Extenuating circumstances under the policy and the TOS

19  supersede Hosts' cancellation policies, and include, among other things, "[u]nexpected serious

20  illness," "[t]ravel restrictions imposed by a government," and "[e]pidemic disease or illness."

21  (Chauvet Decl. Ex. I.)  Plaintiff asserts claims against Airbnb for breach of contract, breach of

22  fiduciary duty, and violation of California's Unfair Competition Law.

23          **B.**     **The Terms of Service (TOS)**

24          The relationship between Airbnb and Users, like Plaintiff, is contractual and is governed

25  by the TOS.  (Chauvet Decl. Ex. G, at 2; Chauvet Decl. Ex. H, at 1.)

26                  **1.**     **Plaintiff Assented to the TOS**

27          Before a User can list an accommodation through Airbnb's online platform, she must first

28  consent to the TOS.  (Chauvet Decl. ¶ 5.)  The TOS are presented to registrants twice via blue

1    hyperlinks during the account registration process:  (1) on the initial sign-up screen, directly below

2    the "Continue with" and "Sign up" buttons; and (2) on the second sign-up screen, directly above

3    the "Sign up" button.  (Chauvet Decl. Exs. C & D.)  The TOS are later presented again every time

4    the TOS are updated.  (Chauvet Decl. ¶ 7.)  By clicking "Sign up" or "Continue with," registrants

5    "agree to Airbnb's Terms of Service [and] Payments Terms of Service . . . ."  (Chauvet Decl. Exs.

6    C & D.)  In short, it is impossible to transact on the Airbnb platform without first assenting to the

7    TOS.

8         Airbnb also updates the TOS from time to time.  When the TOS are updated, Users must

9    accept the updated TOS before they can access their accounts and/or list accommodations.

10   (Chauvet Decl. ¶ 7.)  Airbnb notifies Users of TOS updates by an email that summarizes the

11   material changes in the impending update and provides the opportunity to preview the updated

12   TOS by hyperlink.  (*Id.*)  The first time Users log in to their accounts after the effective date of the

13   updated TOS, they are presented with the updated TOS and are required to affirmatively click a

14   button indicating their agreement to continue to be bound by the updated TOS.  (*Id.*)  Users are

15   required to click this button before they are able to continue using Airbnb's services or to transact

16   with other users via their Airbnb account.  (*Id.*)

17   Airbnb captures and records the date upon which each User accepts the TOS in its business

18   records.  Airbnb's business records confirm that Plaintiff created an Airbnb account on

19   November 3, 2017, and consented to Version 7 of the General TOS and Version 7 of the Payments

20   TOS on that date.  (Chauvet Decl. ¶¶ 9, 12.)  Airbnb's records further confirm that, in addition to

21   consenting to the TOS when he created his account on November 3, 2017, Plaintiff subsequently

22   assented to the TOS two additional times.  (*Id.* ¶ 14.)  Most recently, Plaintiff agreed to Version 10

23   of the General TOS and Version 10 of the Payments TOS on March 28, 2019.  (*Id.*)

**2.      The TOS Contain Broad Arbitration Provisions That Delegate
        Gateway Issues to the Arbitrator**

26   It is undisputed that the General TOS and the Payments TOS contain arbitration provisions

27   that require Plaintiff to arbitrate the claims he asserts in this action.  (*See* Compl. ¶ 57.)

28

1

*(a)    General TOS*

2        Version 10 is the operative General TOS for purposes of this Motion.  It is the most recent

3   version of the General TOS that Plaintiff agreed to before the events at issue here—and before

4   filing either his arbitration or this lawsuit—and it is the version Plaintiff quoted in his arbitration

5   demand (Minor Decl. Ex. B, at 5).  The second paragraph of the operative General TOS expressly

6   notified Plaintiff in **bold** that Section 19 includes an agreement to arbitrate all disputes:

7            **Please note: Section 19 of these Terms contains an arbitration clause and class
           action waiver that applies to all Airbnb [Users].**

8
    (Chauvet Decl. Ex. G ("GTOS") at 1.)  As indicated by the blue text, "Section 19" is a hyperlink

9
    to the arbitration provision within the document.  The arbitration provision unequivocally requires

10
    arbitration of all disputes against Airbnb that arise out of or relate to its platform and services:

11
             **19.4 *Agreement to Arbitrate*. You and Airbnb mutually agree that any dispute,**

12           **claim or controversy arising out of or relating to these Terms or the**
             **applicability, breach, termination, validity, enforcement or interpretation**

13           **thereof, or to the use of the Airbnb Platform, the Host Services, the Group**
             **Payment Service, or the Collective Content (collectively, "Disputes") will be**

14           **settled by binding individual arbitration (the "Arbitration Agreement"). If**
             **there is a dispute about whether this Arbitration Agreement can be enforced**

15           **or applies to our Dispute, you and Airbnb agree that the arbitrator will decide**
             **that issue.**

16

17  (GTOS § 19.4.)

18        Section 19 additionally precludes class claims and requires arbitration on an individual

19  basis:

20           **You and Airbnb acknowledge and agree that, to the fullest extent permitted by**
             **law, we are each waiving the right to participate as a plaintiff or class member**

21           **in any purported class action lawsuit, class-wide arbitration, private attorney**
             **general action, or any other representative proceeding as to all Disputes.**

22           **Further, unless you and Airbnb both otherwise agree in writing, the arbitrator**
             **may not consolidate more than one party's claims and may not otherwise**

23           **preside over any form of any class or representative proceeding. . . .**

24  (GTOS § 19.11.)

25        The arbitration provision also expressly requires arbitration of all disputes involving the

26  "applicability, breach, termination, validity, enforcement or interpretation" of the arbitration

27  provision itself.  (GTOS § 19.4.)  And, it expressly states that disputes regarding the enforceability

28  or the scope of the agreement are to be decided by the arbitrator:  "If there is a dispute about

1    whether this Arbitration Agreement can be enforced or applies to our Dispute, . . . the arbitrator

2    will decide that issue."  (*Id.*)

3                                *(b)     Payments TOS*

4           Version 10 is the operative version of the Payments TOS.  It is the most recent version of

5    the Payments TOS that Plaintiff agreed to before the events at issue here and before filing either

6    his arbitration or this lawsuit.  Like the General TOS, the second paragraph of the operative

7    Payments TOS expressly notified Plaintiff in **bold** that Section 22 includes an agreement to

8    arbitrate all disputes:

9            **Please note: Section 22 of these Payments Terms contains an arbitration clause
             and class action waiver that applies to all Airbnb [Users].**
10

11   (Chauvet Decl. Ex. H. ("PTOS") at 1.)  As indicated by the blue text, "Section 22" is a hyperlink

12   to the arbitration provision within the document.  The Payments TOS contains a substantively

13   identical arbitration provision as the General TOS, which is described above.  (*Compare* GTOS

14   § 19, *with* PTOS § 22.)[2]

15        **C.        Plaintiff Initiates an AAA Arbitration, and Airbnb Pays Any Applicable
                      Arbitration Initiation Fees Within 30 Days After Their Due Date**
16

17          Acknowledging that the TOS "both include an arbitration clause that required [him]" to

18   arbitrate this dispute (Compl. ¶ 57), Plaintiff filed a demand for arbitration with the AAA asserting

19   claims against Airbnb and seeking $1,000 in compensatory damages (Minor Decl. Ex. B, at 4).

20   Plaintiff is a Texas resident (Compl. ¶ 9), and he requested that any in-person arbitration hearing

21   be held in Austin, Texas (not California).  (Minor Decl. Ex. A at 1.)  Airbnb received the AAA's

22   initiation letter regarding Plaintiff's demand on August 31, 2020.  (*Id.*)  That letter stated that

23   Airbnb had until September 14, 2020, to file an answer to Plaintiff's demand.  (*Id.*)  The letter

24   further explained that "$1,800 [a $300 filing fee plus a $1,500 arbitrator compensation fee] is now

25   due from [Airbnb] and an invoice will separately follow. . . . Payment is due by September 14,

26

27   _____

28   [2] Because the arbitration provisions in the General TOS and the Payments TOS are substantively
     identical, the remainder of the Motion uses the collective term "TOS," defined above, to refer
     jointly to the General TOS and the Payments TOS.

1    2020." (*Id.* (emphases omitted).)  Airbnb timely answered Plaintiff's demand on September 14,

2    2020. (Minor Decl. Ex. C.)

3        As of that date, however, Airbnb had not yet received an invoice from the AAA for

4    Plaintiff's arbitration, which is a prerequisite to remitting payments to the AAA.  (Minor Decl.

5    ¶ 7.)  Accordingly, Airbnb requested an invoice from the AAA case administrator responsible for

6    Plaintiff's arbitration, which the case administrator provided on September 18, 2020.  (*Id.* ¶¶ 8–9.)

7    The invoice listed an "Initial Administrative Fee" of $300 and an "Arbitrator's Compensation" fee

8    of $1,500, and stated that, "[u]nless instructed otherwise, invoice balance due upon receipt."

9    (Minor Decl. Ex. E.)  That same day, Airbnb paid the $300 Initial Administrative Fee.  (Minor

10   Decl. Ex. F.)  Under the AAA's rules and practices, the $300 Initial Administrative Fee is the only

11   fee a business must pay "to initiate an arbitration proceeding," Cal. Civ. Proc. Code § 1281.97(a).

12   (*See infra* Section III.C.2(a).)  Thus, regardless of whether the due date for the Initial

13   Administrative Fee either was September 14 or September 18, by immediately paying the fee upon

14   receipt of the invoice on September 18, Airbnb paid any fee necessary to initiate an arbitration

15   "within 30 days after the due date," Cal. Civ. Proc. Code § 1281.97(a), for such fees.

16       Airbnb did not pay the $1,500 Arbitrator's Compensation fee—which is *not* a fee required

17   to initiate an arbitration proceeding under the AAA's rules or practices (*see infra* Section

18   III.C.2(b))—at the time it paid the $300 Initial Administrative Fee.  However, as soon as the AAA

19   case administrator brought the matter to Airbnb's attention (Minor Decl. Ex. H), Airbnb

20   immediately—the same day—paid the $1,500 fee (Minor Decl. Ex. J).  The short delay in

21   payment of the Arbitrator's Compensation fee did not prevent the initiation of the arbitration, as

22   the fee is not required to initiate an arbitration, nor did it prejudice Plaintiff in any way:  the

23   arbitration continued as normal and an arbitrator thereafter was appointed.  (Minor Decl. Ex. K.)

24       **D.**    **Plaintiff's Efforts to Withdraw from the AAA Arbitration**

25       A week after an arbitrator had been appointed—and the day after Plaintiff filed this

26   lawsuit—Plaintiff's counsel sent an email to the AAA case administrator purporting to

27   "withdraw" Plaintiff's claim from arbitration under California Code of Civil Procedure section

28   1281.97(b).  (Minor Decl. Ex. M.)  Airbnb immediately objected to the requested withdrawal as

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS

improper.  (Minor Decl. Ex. N.)  Airbnb noted that section 1281.97 was not applicable and that, to the extent Plaintiff was asserting that the parties' arbitration agreement had been breached, the arbitration agreement "provides that the Arbitrator will determine that issue."  (*Id.*)

On December 1, 2020, the arbitrator issued a preliminary ruling voiding Plaintiff's purported withdrawal, stating that it has "no effect."  (Minor Decl. Ex. O, at 4.)  The arbitrator also temporarily suspended the arbitration pursuant to AAA Consumer Arbitration Rule 1(f), which provides that, if

> a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 30 days to permit the party to obtain a stay of arbitration from the court.

(*Id.* at 1–3.)

## III.   ARGUMENT

Based upon federal and California law, Plaintiff is bound by the TOS to arbitrate the claims in his Complaint, and should be compelled to do so.  Plaintiff admits that he was required under the TOS to arbitrate his claims, thereby conceding that he assented to the TOS and the arbitration agreements contained therein.  (Compl. ¶ 57.)  Plaintiff also agreed that his claims, as well as all threshold issues regarding the arbitrability of disputes, are for the arbitrator, not this Court, to decide.  As the Supreme Court recently and unanimously held, when a contract delegates threshold questions of arbitrability to the arbitrator, a court must honor the parties' contractual decision and refer the matter to arbitration without exception.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019).

Plaintiff's invocation of California Code of Civil Procedure section 1281.97 does not dictate a different result.  As an initial matter, the parties have agreed to delegate the question of whether Airbnb breached the arbitration agreements under section 1281.97 to the arbitrator, not the Court.  Even if the Court had the authority to rule on that question, and assuming, for the sake of argument, that section 1281.97 applied here (as outlined in Section III.C.3, *infra*, it does not), Airbnb did not breach the arbitration agreements because Airbnb paid all AAA fees to initiate an arbitration within 30 days of their due date.  At any rate, section 1281.97 does not apply here

1   because this Motion is brought under the Federal Arbitration Act, not California law.  Section

2   1281.97 also is inconsistent with, and preempted by, the Federal Arbitration Act.

3     **A.**  <u>**The Federal Arbitration Act Governs**</u>

4      The arbitration provisions in the TOS expressly state that they are governed by the Federal

5   Arbitration Act ("FAA"):  "This Arbitration Agreement evidences a transaction in interstate

6   commerce and thus *the Federal Arbitration Act governs the interpretation and enforcement of this*

7   *provision*."  (GTOS § 19.6; PTOS § 22.6.)  As the Supreme Court has made clear, the FAA—and

8   the body of federal law developed pursuant to it—governs the interpretation and application of an

9   arbitration provision that is made expressly subject to its provisions.  *DirecTV, Inc. v. Imburgia*,

10  577 U.S. 47, 53–54 (2015) (confirming parties can contractually agree to designate FAA as

11  governing law).  And, as the Supreme Court has further held, the FAA preempts any inconsistent

12  state law.  *DirectTV*, 577 U.S. at 53 (holding "the judges of every State must follow" the FAA).

13  Accordingly, the FAA and the body of federal law developed pursuant to it applies here.

14    **B.**  <u>**The Court Should Compel Arbitration of Plaintiff's Claims**</u>

15     Section 2 of the FAA codifies a strong federal policy favoring arbitration, making

16  arbitration provisions "valid, irrevocable, and enforceable, save upon such grounds as exist at law

17  or in equity for the revocation of any contract."  9 U.S.C. § 2; *see AT&T Mobility LLC v.*

18  *Concepcion*, 563 U.S. 333, 339 (2011) (federal policy favoring arbitration requires rigorous

19  enforcement of arbitration agreements).  Section 2 creates a heavy presumption in favor of

20  arbitrability that requires courts to resolve all doubt as to the scope of arbitrable issues in favor of

21  arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)

22  (holding that "questions of arbitrability must be addressed with a healthy regard for the federal

23  policy favoring arbitration," and "any doubts concerning the scope of arbitral issues should be

24  resolved in favor of arbitration . . ."); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr.*

25  *Univ.*, 489 U.S. 468, 475–76 (1989) (noting "settled" rule that questions of arbitrability in

26  contracts subject to the FAA "must be resolved with a healthy regard for the federal policy

27  favoring arbitration"); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614,

28

626 (1985) (noting that while the parties' intentions control interpretation of a contract subject to the FAA, "those intentions are generously construed as to issues of arbitrability").

The strong presumption in favor of arbitration limits a court's inquiry on a motion to compel arbitration to two issues:  (1) whether the parties agreed to arbitrate (*i.e.*, whether they assented to the arbitration contract); and (2) if so, whether the agreement encompasses the asserted claims (*i.e.*, whether the claims asserted are within the scope of the arbitration contract). *Chiron Corp. v. Ortho Diagnostics Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  In short, the two considerations are mutual assent and scope, and once the court finds that both are satisfied (as they are here), it must compel arbitration.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (stating that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed") (emphasis in original)); *Chiron Corp.*, 207 F.3d at 1130; *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 583 (N.D. Cal. 2020).

### 1.    Plaintiff Agreed to Arbitrate His Claims Against Airbnb

Plaintiff admits that he was required under the TOS to arbitrate his claims, thereby conceding that he assented to the TOS and the arbitration agreements contained therein, and that the arbitration agreements encompass the claims at issue.  (Compl. ¶ 57 ("Airbnb's Terms of Service and Airbnb Payments' Payments Terms of Service both include an arbitration clause that required Plaintiff to initially file his claims with the American Arbitration Association . . . .").)  To the extent Plaintiff now claims that he did not agree to the arbitration provisions in the TOS, assent is easily established here.

Because arbitration agreements are contracts, assent is analyzed under "ordinary state-law principles that govern the formation of contracts."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–45 (1995); *Peter*, 445 F. Supp. 3d at 584–85.  The TOS contain California choice of law provisions.  (GTOS § 21.1; PTOS § 21.1.)  Courts applying California law regularly enforce "clickwrap" or "scroll-wrap" agreements—such as the TOS—because they require users to manifest their assent by clicking "Agree" or an equivalent button, which constitutes an objective manifestation of assent to the contract terms. *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484

(9th Cir. 2020) (enforcing arbitration provision and finding that plaintiff assented to Terms of Use by clicking "Sign In" button where hyperlink to TOU appeared below button); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020) (holding that plaintiff validly assented to Terms of Use, including arbitration provision, when "he clicked the 'Sign In' button" where hyperlink to TOU appeared below button); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (same). Indeed, this Court recently enforced an agreement nearly identical to Airbnb's TOS.  *Peter*, 445 F. Supp. 3d at 585–87.

The result can be no different here.  Plaintiff assented to Airbnb's TOS through substantially the same sign-up process and after being presented with screens that were substantially similar to the sign-up page in *Peter*.  Like the sign-up page in *Peter*, the sign-up screens presented to Plaintiff:  (1) were uncluttered and wholly visible; (2) contained three click button options: "Continue with Facebook," "Continue with Google," and "Sign up with Email"; (3) contained, below those three options, text that stated, "By clicking Sign up or Continue with, I agree to Airbnb's Terms of Service [and] Payments Terms of Service . . ."; and (4) included hyperlinks in blue, which indicated to Plaintiff that they were clickable, to the TOS.  (*Compare* Tang Decl., *Peter v. DoorDash, Inc.*, No. 19-cv-6098 (N.D. Cal. Nov. 15, 2019), ECF No. 17-1, *with* Chauvet Decl. Exs. C & D.)  Further, Airbnb's TOS were presented to Plaintiff *twice* during the sign-up process, the second time immediately *above* the sign-up button—meaning that Plaintiff would have had to read the text alerting him to the TOS *before* clicking the sign-up button and completing the registration process.  (Chauvet Decl. Exs. C & D.)  By clicking the "Sign up" button and creating an Airbnb account on November 3, 2017 (Chauvet Decl. ¶ 9), Plaintiff manifested his assent to the TOS and the arbitration provisions they contained.[3]

---

[3] Multiple courts in various jurisdictions throughout the United States have considered Airbnb's sign-up procedure and have compelled arbitration upon finding that the process adequately notifies registrants that they are agreeing to arbitrate their disputes with Airbnb.  *See, e.g.*, *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 553 (S.D.N.Y. 2018); *Selden v. Airbnb, Inc.*, No. 16-cv-0933, 2016 WL 6476934 (D.D.C. Nov. 1, 2016).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS

1  Plaintiff acknowledged that he agreed to arbitrate this dispute when he initiated his

2  arbitration against Airbnb.  He unquestionably manifested his assent to the TOS and the arbitration

3  provisions contained therein when he signed up for his Airbnb account.

4  **2.      The Delegation Clause Is "Clear and Unmistakable" and Thus Compels Arbitration of Gateway Issues Including Scope and Enforceability**

5

6  Because Plaintiff initially filed a demand for arbitration, he has conceded that his dispute

7  falls within the scope of the arbitration agreements.  But, at any rate, the TOS delegate any

8  questions of arbitrability to the arbitrator.  (GTOS § 19.4; PTOS § 22.4.)

9  As the Supreme Court recently held in a unanimous decision, when a contract expressly

10  delegates threshold questions of arbitrability, including the breach or enforcement of an arbitration

11  agreement, to the arbitrator, a court must honor the parties' contractual decision and refer the

12  matter to arbitration without exception, and without making its own determinations about

13  arbitrability.  *Henry Schein, Inc.*, 139 S. Ct. at 529; *see also First Options of Chi.*, 514 U.S. at 943;

14  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68, 71–74 (2010) (upholding enforceability of an

15  "agreement to arbitrate threshold issues" regarding the arbitrability of the dispute); *Peter*, 445 F.

16  Supp. 3d at 584; *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 243 (2016) ("'[W]ho decides'

17  [issues of arbitrability] is a matter of party agreement"); *Bruni v. Didion*, 160 Cal. App. 4th 1272,

18  1286 (2008) (explaining "[b]ecause the parties are the masters of their collective fate, they can

19  agree to arbitrate almost any dispute—even a dispute over whether the underlying dispute is

20  subject to arbitration.").

21  Delegation clauses are enforceable if they are "clear and unmistakable."  *Rent-A-Ctr.*,

22  561 U.S. at 79–80; *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir.

23  2017) ("[P]arties may delegate the adjudication of gateway issues to the arbitrator if they 'clearly

24  and unmistakably' agree to do so."); *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011); *Dream

25  Theater, Inc. v. Dream Theater*, 124 Cal App. 4th 547, 552 (2004).  Courts agree that express

26  delegation language in the arbitration agreement satisfies the "clear and unmistakable" standard.

27  *Rent-A-Ctr.*, 561 U.S. at 79–80; *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir.

28  2016) (en banc) (evidence of a "clear and unmistakable" delegation includes "an express

1    agreement to do so"); *Momot*, 652 F.3d at 987–88 (same); *Malone v. Super. Ct.*, 226 Cal. App. 4th

2    1551, 1560 (2014) (same).

3           The delegation language in the arbitration provisions here is "clear and unmistakable."  It

4    expressly states that

5              any dispute . . . arising out of or relating to [the General TOS/the Payments TOS]
               or the applicability, breach, termination, validity, enforcement or interpretation
6              thereof . . . will be settled by binding individual arbitration (the "Arbitration
               Agreement").  If there is a dispute about whether this Arbitration Agreement can be
7              enforced or applies to our Dispute, you and [Airbnb/Airbnb Payments] agree that
               the arbitrator will decide that issue.
8

9    (GTOS § 19.4; PTOS § 22.4.)  Accordingly, the parties have expressly delegated all disputes

10   concerning the applicability, breach, termination, validity, enforceability, or interpretation of the

11   arbitration provisions to the arbitrator, and the Court's inquiry must end.[4]

12          Courts repeatedly have interpreted similar language as meeting the "clear and

13   unmistakable" threshold for delegation.  In *Momot*, for example, the Ninth Circuit affirmed the

14   arbitrability of gateway issues where the agreement stated that disputes arising out of or relating to

15   "this Agreement, . . . the breach of this Agreement or *the validity or application of* [the arbitration

16   provision] . . . shall be resolved exclusively by binding arbitration."  652 F.3d at 988 (emphasis

17   added).  The TOS here contain an even clearer delegation clause than the sufficiently "clear and

18   unmistakable" delegation clause enforced in *Momot*.  The parties therefore have authorized the

19   arbitrator, among other things, to determine whether Plaintiff's claims fall within the scope of the

20   arbitration agreements.

21          Because assent and scope are established here, this Court must compel arbitration.

22

23

24   _____
     [4] Additionally, the arbitration provisions incorporate the AAA Consumer Arbitration Rules
     (GTOS § 19.6; PTOS § 22.6), which give the arbitrator the authority to rule on his or her own
25   jurisdiction (Minor Decl. Ex. R, at 17).  The Ninth Circuit and the California Court of Appeal have
     held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that
26   contracting parties agreed to arbitrate arbitrability."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130
     (9th Cir. 2015); *Portland Gen. Elec. Co.*, 862 F.3d at 985; *Rodriguez v. Am. Techs., Inc.*, 136 Cal.
27   App. 4th 1110, 1123 (2006) ("By incorporating [the AAA Rules] into their agreement, the parties
     clearly evidenced their intention to accord the arbitrator the authority to determine issues of
28   arbitrability.").

C.   **Plaintiff's Invocation of California Code of Civil Procedure Section 1281.97 Does Not Dictate a Different Result**

Plaintiff tries to justify his attempt to withdraw from arbitration and proceed in this Court by invoking California Code of Civil Procedure section 1281.97(a), which provides:

> In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration administrator, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration under Section 1281.2.

Plaintiff alleges that "Airbnb's failure to pay AAA in full within 30 days of the due date constitutes a waiver of Airbnb's right to compel arbitration." (Compl. ¶ 60.)  The parties have expressly delegated this question to the arbitrator, not the Court.  Even if this argument were for the Court to decide, it has no legal or factual basis and should be rejected.

1.   **Whether Airbnb "Material[ly] Breach[ed]" or Waived the Arbitration Agreements Under Section 1281.97(a) Is a Question for the Arbitrator**

As explained in Section III.B.2, *supra*, the TOS delegate to the arbitrator questions regarding "the applicability, breach, termination, validity, enforcement or interpretation" of the arbitration provisions, and further state that, "[i]f there is a dispute about whether this Arbitration Agreement can be enforced or applies to our Dispute, you and [Airbnb/Airbnb Payments] agree that the arbitrator will decide that issue."  (GTOS § 19.4; PTOS § 22.4.)  Accordingly, whether Airbnb "material[ly] breach[ed]" the provisions or waived its right to enforce the provisions under section 1281.97(a) based on conduct before the AAA is a question for the arbitrator, not the Court, to decide.  *See, e.g.*, *Pierce Cnty. v. MA Mortenson Co.*, 798 F. App'x 160, 161 (9th Cir. 2020) (given "clear and unmistakable evidence" of delegation of questions of arbitrability, "it is for the arbitrator to decide whether [party's] 'Claims' should be deemed 'waived'"); *Ngo v. PMGI Fin., LLC*, No. 18-cv-5401, 2018 WL 6618316, at *9 (N.D. Cal. Dec. 18, 2018) (holding that delegation clause encompassed claim that defendants waived right to compel arbitration, where clause stated that "'disputes [regarding] the validity and scope'" of the arbitration provision were for arbitrator to decide); *Hamby v. Power Toyota Irvine*, No. 11-cv-0544, 2012 WL 13036860, at *4 (S.D. Cal.

1    Mar. 22, 2012) ("[I]ssues of waiver are reserved for the arbitrator when a valid delegation

2    provision applies."); *Nat'l Cas. Co. v. First State Ins. Grp*., No. 04-cv-10167, 2005 WL 8175828,

3    at *4 (D. Mass. Apr. 28, 2005), *aff'd*, 430 F.3d 492 (1st Cir. 2005) (whether conduct "amounts to

4    a material breach of the arbitration agreement . . . generally present[s] procedural questions for the

5    arbitrator to resolve in the course of arbitration").  Indeed, that is all the more the case here given

6    that an arbitration *already has been* commenced with the AAA.  *See Sw. Reg'l Council of*

7    *Carpenters v. Drywall Dynamics, Inc*., 823 F.3d 524, 531 (9th Cir. 2016) (noting that "[o]nce a

8    matter is submitted to arbitration," the "presumption is that the arbitrator should decide

9    allegation[s] of waiver, delay, or a like defense to arbitrability" (internal quotation marks

10   omitted)).

11          Nor does the language of section 1281.97 itself dictate that a court, as opposed to an

12   arbitrator, is required to decide whether a party has complied with it—which, if it did, would be

13   plainly inconsistent with the parties' right to delegate such issues to the arbitrator, as they have

14   clearly and unmistakably done here.  *Cf. Ngo*, 2018 WL 6618316, at *9 ("To the extent that

15   section 1281.2 could be construed as requiring judicial determination rather than arbitration of

16   waiver [of the right to compel arbitration], it is preempted by the FAA.").

17          It is particularly appropriate for the arbitrator, not the Court, to resolve the section 1281.97

18   question here because the statute requires interpretation of the AAA Consumer Arbitration Rules

19   (the "AAA Rules"), as well as the AAA's own invoicing and billing policies and practices.  The

20   applicability of section 1281.97 turns on whether "the rules of the arbitration administrator"—

21   here, the AAA—require Airbnb to pay certain "fees or costs to initiate an arbitration proceeding,"

22   and, if so, whether Airbnb's payments to the AAA were made "within 30 days after the due date."

23   Cal. Civ. Proc. Code § 1281.97(a).  Whether Airbnb paid the fees within "30 days after the due

24   date" is dependent on an interpretation of the AAA's invoicing and billing policies and practices—

25   an issue that is made all the more complicated given the AAA's delay in sending Airbnb an initial

26   invoice.  (*See infra* Section II.C.)  These types of questions are especially well-suited for the AAA

27   arbitrator, not this Court, to resolve.

28          Numerous courts have held that procedural disputes dependent upon the arbitration

1    organization's rules and practices, including arbitration deadlines, payments of fees, and issues

2    similar to those presented here, are for the arbitrator, not the court, to decide.  *See, e.g.*, *Lifescan,*

3    *Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1011–13 (9th Cir. 2004) (holding that district

4    court had no authority to issue order regarding apportionment of fees in arbitration because

5    parties' agreement delegated question to arbitrator through incorporation of AAA rules); *Adams v.*

6    *Postmates, Inc.*, 414 F. Supp. 3d 1246, 1248, 1255 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535

7    (9th Cir. 2020) (rejecting request "to compel Postmates to pay the arbitrator's fee within a

8    prescribed time-period" because, under the AAA Commercial Arbitration Rules, "the payment of

9    arbitration fees, including related expenses, is a procedural condition precedent to be decided by

10   the arbitrator"); *Brunner v. Lyft, Inc.*, No. 19-cv-4808, 2019 WL 6001945, at *2 (N.D. Cal.

11   Nov. 14, 2019) ("[T]he arbitrator . . . is well positioned to decide in the first instance whether the

12   non-payment of fees justifies the termination of arbitral proceedings."); *Nat'l Cas. Co.*, 2005 WL

13   8175828, at *4 (claim that party's conduct in arbitration "amounts to a material breach of the

14   arbitration agreement . . . generally present[s] procedural questions for the arbitrator to resolve in

15   the course of arbitration"); *Greenspan v. LADT, LLC*, 185 Cal. App. 4th 1413, 1451, 1458 (2010)

16   (procedural disputes concerning arbitration deadlines are "vested solely in the arbitrator under

17   JAMS rules," should be "decided by the arbitrator as a final matter," and are "unreviewable on the

18   merits").  Delegation also makes particular sense here where Plaintiff already has commenced an

19   arbitration, Airbnb has answered Plaintiff's arbitration demand, an arbitrator has been appointed

20   and is ready to decide these issues, and the arbitration remains pending.  (Minor Decl. ¶¶ 3, 6, 14,

21   19.)[5]

22          The arbitrator's December 1, 2020 ruling is not to the contrary.  The arbitrator did not rule

23   on the merits of Plaintiff's section 1281.97 argument nor did he rule on his own jurisdiction; the

24

25   _____

[5] In some cases courts have made a determination as to whether a party complies with section
1281.97(a).  *E.g.*, *Dekker v. Vivint Solar, Inc.*, No. 19-cv-7918, 2020 WL 4732194 (N.D. Cal.
26   Aug. 14, 2020), *appeal filed* No. 20-16584 (9th Cir. Aug. 18, 2020).  Critically though, in such cases
the courts did not consider the argument that the question of whether a party "materially breached"
27   or waived an arbitration agreement under section 1281.97(a) was an issue for the arbitrator, not the
court, to resolve, under the parties' arbitration agreement.  Nor in such cases was there an arbitrator
28   appointed and an arbitration pending, as here.  Rather, those cases addressed a defendant's failure to
pay the initial filing fee necessary for the arbitration to commence.

1   arbitrator simply followed AAA Rule 1(f), which provides for a temporary administrative

2   suspension of an arbitration in the event that "a party seeks judicial intervention with respect to a

3   pending arbitration . . . ."  (Minor Decl. Ex. O ¶ 7.)  Indeed, if anything, under the arbitrator's

4   order, *Plaintiff* has the burden to seek a stay of arbitration from this Court, which he has not done.

5                    **2.      Even if the Court Had Authority to Consider the Applicability of
                              Section 1281.97, Airbnb Did Not Breach the Arbitration Agreements**

6

7           As explained further in Sections III.C.3 and III.C.4, *infra*, section 1281.97 is inapplicable

8   to this Motion brought under the FAA.  Even if it were, however, and this Court had the authority

9   to consider the question, Airbnb did not "material[ly] breach" the parties' arbitration agreements

10  within the meaning of section 1281.97(a), because Airbnb paid all fees necessary to initiate an

11  arbitration within 30 days after their due date.

12                    *(a)      Airbnb Timely Paid the $300 Initial Administrative Fee*

13          The AAA Rules provide that,

14          [i]n cases before a single arbitrator where the consumer is the Claimant, a
            nonrefundable filing fee, capped in the amount of $200, is payable in full by the
15          consumer when a case is filed unless the parties' agreement provides that the
            consumer pay less.  A nonrefundable filing fee in the amount of $300 is payable by
16          the business once the consumer claimant meets the filing requirements, unless the
            parties' agreement provides that the business pay more.
17

18  (Minor Decl. Ex. R, at 34 (Costs of Arbitration section of AAA Rules).)  Airbnb indisputably paid

19  this $300 filing fee within 30 days after its due date.

20          As discussed, Airbnb received the AAA's initiation letter regarding Plaintiff's demand on

21  August 31, 2020.  (Minor Decl. Ex. A.)  That letter stated that Airbnb had until September 14,

22  2020, to file an answer to Plaintiff's demand.  (*Id.* at 1.)  The letter further stated that "$1,800 [a

23  $300 filing fee plus a $1,500 arbitrator compensation fee] is now due from [Airbnb] and an

24  invoice will separately follow. . . . Payment is due by September 14, 2020."  (*Id.* at 2 (emphases

25  omitted).)  As of September 14, 2020, however, Airbnb had not yet received an invoice from the

26  AAA for Plaintiff's arbitration.  (Minor Decl. ¶ 7.)  Airbnb could not pay the fee until it received

27  the invoice, as an invoice is required to remit payment to the AAA.  (*See id.*; *Pay Online*, AM.

28  ARBITRATION ASS'N, https://apps.adr.org/SimplePay/faces/SimplePay.jsf (last visited Jan. 20,

2020) ("To pay online you will need your Case Number and Pay PIN.  Your Pay PIN can be found in the lower left hand portion of your invoice or statement.").  Airbnb thus reached out to the AAA case administrator to request an invoice, which the case administrator provided on September 18, 2020.  (Minor Decl. ¶¶ 8–9.)  The invoice listed an "Initial Administrative Fee" of $300 and an "Arbitrator's Compensation" fee of $1,500, and stated that, "[u]nless instructed otherwise, invoice balance due upon receipt."  (Minor Decl. Ex. E.).  Airbnb paid the $300 Initial Administrative Fee—the only fee required under the AAA Rules "to initiate an arbitration proceeding," Cal. Civ. Proc. Code § 1281.97(a)—the same day it received the invoice, September 18, 2020.  (Minor Decl. ¶ 10.)

Accordingly, regardless of whether the "due date" for the $300 Initial Administrative Fee was September 14 (per the AAA's initiation letter) or September 18 (the date Airbnb received the AAA invoice), Airbnb unquestionably paid the fee "within 30 days after the due date," Cal. Civ. Proc. Code § 1281.97(a).[6]

(b)  *The Arbitrator Compensation Fee Is Not Required to "Initiate" an Arbitration Under the AAA Rules*

The facts demonstrating the progression of Plaintiff's arbitration here prior to the payment of the arbitrator compensation fee, as well as the AAA's recent confirmation that such fees are not required to initiate an arbitration, both make clear that the arbitrator compensation fee is not an administrative fee required to be paid to "initiate" an arbitration under the AAA Rules.

AAA Rule 2 governs the initiation of an arbitration where, as here, the parties have entered into an arbitration agreement.  (Minor Decl. Ex. R, at 11.)  Notably, AAA Rule 2 makes no mention of arbitrator compensation—it provides only that proper filing fees must be paid to initiate an arbitration.  (*Id.* at 11–13.)  In accordance with AAA Rule 2, Plaintiff initiated his arbitration by filing a demand for arbitration on July 28, 2020, submitting a copy of the parties' arbitration agreement to the AAA, and paying "[t]he proper filing fee."  (Minor Decl. Ex. B;

---

[6] Even in *Dekker*, the court concluded that "due date" under section 1281.97 meant the due date provided for on the fee invoice, 2020 WL 4732194, at *5—here, September 18, 2020, "[u]nless instructed otherwise" (Minor Decl. Ex. E).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS

Minor Decl. Ex. R, at 11–12; Minor Decl. Ex. A.)  Pursuant to AAA Rule 2, the AAA thereafter sent written notice to Plaintiff and Airbnb letting them know that Plaintiff's demand had been received.  (Minor Decl. Ex. R, at 12; Minor Decl. Ex. A.)  Two weeks later, on September 14, 2020, Airbnb filed an answer to Plaintiff's demand describing in detail why it denied Plaintiff's allegations.  (Minor Decl. Ex. C.)  Under AAA Rule 2, the arbitration was underway well before the appointment of an arbitrator on October 30, 2020 (Minor Decl. Ex. K).  Accordingly, payment of the arbitrator compensation fee—which is not referenced in AAA Rule 2—could not have been required to initiate the arbitration proceeding under the AAA Rules.

The recently amended AAA Rules and invoices received by Airbnb in other arbitrations post-amendment further confirm that the arbitrator compensation fee is not a fee required to initiate an arbitration under the AAA Rules and within the meaning of section 1281.97.  A new version of the "Costs of Arbitration" section of the AAA Rules went into effect on November 1, 2020.  (Minor Decl. Ex. S.)  Among other changes, the AAA Rules now confirm that "[a]rbitrator compensation is not included as part of the AAA's administrative fees."  (*Id.* at 34.)  The AAA Rules also now include a disclaimer that states that, "[i]n the event the single consumer case filing is closed due to non-payment of *initial filing fees* by the business the AAA will return any filing fee received from the individual."  (*Id.* at 35 (emphasis added).)  In addition, in initiation letters received by Airbnb for other consumer arbitrations commenced, the AAA now provides that the "Amounts Paid or Due," pursuant to California Code of Civil Procedure sections 1281.97 and 1281.98, *only* include Airbnb's $300 filing fee.  (Minor Decl. Ex. P, at 2.)  The letter, in fact, no longer mentions arbitrator compensation at all.  (*Compare id.* (no reference to arbitrator compensation), *with* Minor Decl. Ex. A, at 2 (describing how arbitrator will be compensated and assessing a $1,500 arbitrator compensation fee).)  The letter also now provides that payment of the $300 filing fee must be received within 30 days of the specified due date, citing section 1281.97.  (Minor Decl. Ex. P, at 2.)  Taken together, the recent changes implemented by the AAA confirm that the AAA views only the $300 filing fee to be a fee required to initiate an arbitration under the AAA Rules and within the meaning of section 1281.97.

1   Judge Alsup's decision in *Dekker v. Vivint Solar, Inc.*, No. 19-cv-7918, 2020 WL 4732194

2   (N.D. Cal. Aug. 14, 2020), *appeal filed* No. 20-16584 (9th Cir. Aug. 18, 2020), is not to the

3   contrary.  *Dekker*—which Airbnb respectfully contends was wrongly decided for the reasons

4   explained below and which is on appeal to the Ninth Circuit—involved the defendant's purported

5   failure to pay *filing fees* within 30 days of receiving the invoices, not *arbitrator compensation*

6   *fees*.  *See* 2020 WL 4732194, at *5; *see also* Decl. of Corey B. Bennett in Support of Plaintiffs'

7   Motion to Vacate Order Compelling Arbitration, Ex. D, *Dekker* (N.D. Cal. June 24, 2020), ECF

8   No. 68-5.  Since Airbnb indisputably paid the $300 filing fee within 30 days of receiving the AAA

9   invoice, this case is entirely distinguishable from *Dekker*.

10              (c)      *Airbnb Paid the Arbitrator Compensation Fee Within 30 Days After*
                          *Its Due Date*
11

12   Even if the arbitrator compensation fee constituted a fee "to initiate an arbitration

13   proceeding" within the meaning of section 1281.97—which it does not—Airbnb paid that fee

14   within 30 days of the specified due date.  Although the AAA initiation letter for Plaintiff's

15   arbitration stated that the arbitrator compensation fee was "due by September 14, 2020," as noted,

16   Airbnb did not receive a fee invoice—which was required for Airbnb to remit payment—until

17   September 18, 2020, the day after Airbnb contacted the AAA case administrator proactively

18   requesting an invoice.  (Minor Decl. ¶¶ 3, 7–9.)  The invoice Airbnb received further provided that

19   "[u]nless instructed otherwise, invoice balance due upon receipt."  (Minor Decl. Ex. E.)  On

20   October 21, 2020, Airbnb received a letter from the AAA case administrator stating that the "final

21   deadline for payment in the amount of $1,500.00 is November 4, 2020."  (Minor Decl. Ex. H.)

22   Airbnb paid the $1,500 arbitrator compensation fee on October 21, 2020—well within 30 days of

23   the due date communicated by the AAA in its October 21, 2020 letter.  (Minor Decl. Ex. J.)

24   For the reasons stated above, even if section 1281.97 applied here—which it does not—

25   Airbnb did not breach the arbitration agreements within the meaning of section 1281.97(a).

26

27

28

1

2

### 3.    Section 1281.97 Does Not Apply to Motions to Compel Arbitration Brought in Federal Court Under the FAA

3        Section 1281.97, a California procedural rule, does not apply to this Motion brought under

4    the FAA.  On its face, section 1281.97 applies only to the right to compel arbitration under the

5    California Arbitration Act ("CAA"), not the FAA.  It provides that failure to pay "fees or costs to

6    initiate an arbitration proceeding . . . within 30 days after the due date" results in a "waive[r] [of

7    the] right to compel arbitration *under Section 1281.2* [of the California Code of Civil Procedure],"

8    which is part of the CAA.  Cal. Civ. Proc. Code § 1281.97(a) (emphasis added).  Because Airbnb

9    brings this Motion under the FAA, and not the CAA, section 1281.97 does not impact Airbnb's

10   right to compel arbitration in this case.  To the extent Plaintiff contends that the choice of law

11   provision in Airbnb's TOS evidences the parties' intent to incorporate California state arbitration

12   rules into their arbitration agreement, the Ninth Circuit rejected that argument in *Wolsey, Ltd. v.*

13   *Foodmaker, Inc.*, 144 F.3d 1205, 1213 (9th Cir. 1998) (rejecting argument that general choice of

14   law provisions "incorporate state rules that govern the allocation of authority between courts and

15   arbitrators").

16       In *Dekker*, the defendants argued that they "compelled arbitration under the FAA, not the

17   California Arbitration Act," but Judge Alsup rejected that argument as "a distinction without a

18   difference" because the "FAA sits atop state law — it does not wholly displace it."  2020 WL

19   4732194, at *3 (emphasis omitted).  Respectfully, that conclusion ignores the plain language of

20   section 1281.97—which on its face only applies to the "right to compel arbitration under Section

21   1281.2" of the CAA, not the right to compel arbitration under the FAA.

22              **4.    Section 1281.97 Is Preempted by the FAA**

23       Even apart from all of these deficiencies, if the Court were to hold that it had the authority

24   to consider Plaintiff's section 1281.97 defense, section 1281.97 is preempted by the FAA.  The

25   Ninth Circuit has recognized that a state-law rule may be preempted by the FAA in two ways:

26   (1) if it is not a "generally applicable contract defense" that applies "equally to arbitration and

27   non-arbitration agreements"; and (2) "if it 'stand[s] as an obstacle to the accomplishment of the

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS

1  FAA's objectives.'"  *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 825 (9th Cir. 2019) (quoting

2  *Concepcion*, 563 U.S. at 341).  Here, both are true of section 1281.97.

3        *First*, section 1281.97 is not a "generally applicable contract defense" that applies "equally

4  to arbitration and non-arbitration agreements," *Blair*, 928 F.3d at 825, because, by its very terms,

5  it applies *only* to arbitration agreements and only to the *drafter* of such agreements.  *See* Cal. Civ.

6  Proc. Code § 1281.97(a); *see also McLellan v. Fitbit, Inc.*, No. 16-cv-0036, 2018 WL 3549042, at

7  *5–7 (N.D. Cal. July 24, 2018) (holding that "a finding of material breach or default" for "slow

8  payment of filing fees, as opposed to no payment at all" would "be tantamount to a 'defense that is

9  only applicable to arbitration agreements,' which the FAA does not permit").  *Second*, applying

10 section 1281.97 to the right to compel arbitration here would displace the parties' agreement to

11 arbitrate disputes pursuant to the AAA Rules (GTOS § 19.6; PTOS § 22.6), thereby creating "an

12 obstacle to the accomplishment of the FAA's objectives," *Concepcion*, 563 U.S. at 343.  The

13 AAA Rules include provisions for the payment of fees and the consequences for nonpayment of

14 fees.  (Minor Decl. Ex. R, at 32–37.)  They do not include a requirement for a finding of default

15 and waiver of the right to compel arbitration as a result of failure to pay fees within 30 days after

16 their "due date," Cal. Civ. Proc. Code § 1281.97(a).  Accordingly, application of section 1281.97

17 here would displace the parties' agreement—the enforcement of which was the "preeminent

18 concern of Congress in passing the [FAA]," *Byrd*, 470 U.S. at 221.

19       **D.**   **The Court Should Dismiss Plaintiff's Complaint**

20       Where a dispute is subject to arbitration under the terms of a written agreement, the district

21 court shall "stay the trial of the action until such arbitration has been had in accordance with the

22 terms of the agreement . . . ."  9 U.S.C. § 3.  "Nevertheless, courts have discretion under 9 U.S.C.

23 § 3 to dismiss claims that are subject to an arbitration agreement."  *Klein v. Delbert Servs. Corp.*,

24 No. 15-cv-0432, 2015 WL 1503427, at *6 (N.D. Cal. Apr. 1, 2015); *see also Sparling v. Hoffman*

25 *Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *Thinket Ink Info. Res., Inc. v. Sun Microsystems,*

26 *Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (finding dismissal proper rather than a stay of plaintiffs'

27 claims that were subject to arbitration); *Jones-Mixon v. Bloomingdale's, Inc.*, No. 14-cv-1103,

28

1    2014 WL 2736020, at *10 (N.D. Cal. June 11, 2014) (listing cases from this District in which

2    courts dismissed cases upon granting a motion to compel arbitration).

3        Accordingly, Airbnb respectfully requests that this Court exercise its discretion and

4    dismiss Plaintiff's Complaint.  *See Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1169

5    (N.D. Cal. 2011) (noting that Ninth Circuit in *Sparling* "held that courts have discretion under

6    9 U.S.C. § 3 to dismiss claims that are subject to an arbitration agreement" and holding that

7    dismissal was appropriate because plaintiff's "claims [we]re subject to arbitration").

8    **IV.    <u>CONCLUSION</u>**

9        The arbitration provisions are clear, and so is federal and California law:  this case cannot

10   proceed in this Court because Plaintiff assented to the arbitration provisions and the parties

11   expressly agreed to delegate all other questions to the arbitrator, including whether Airbnb

12   breached the arbitration agreements within the meaning of California Code of Civil Procedure

13   section 1281.97.  Even if the Court had the authority to consider the section 1281.97 question, that

14   statute does not apply here because Airbnb paid all AAA fees within 30 days after their due date,

15   this Motion is brought under the FAA, and section 1281.97 is inconsistent with and preempted by

16   the FAA.  Accordingly, this Court should issue an order compelling Plaintiff to arbitrate his claims

17   and dismissing the Complaint.

19   DATED:  January 21, 2021              MUNGER, TOLLES & OLSON LLP

21                                          By:    /s/ Hailyn J. Chen
22                                                HAILYN J. CHEN
                                                 Attorneys for Defendants Airbnb, Inc. and Airbnb
23                                               Payments, Inc.